### CHAMPNEYS vs. WILSON.

### Case from Liberty County.

When the arbitrators meaning to follow the law, mistake it, it is a good ground for setting aside their award, so far as it is affected by that mistake.

But if, without reference to the law, they make an equitable decision, it is no objection to the award, that in some point, it is against law.

Where by the terms of submission, two persons were to be appointed, with power, if they should disagree, to call in "a third," and upon such disagreement, a third person was called in, and signed the award with one of the other arbitrators, *held*, that such third person was only an *arbitrator*, and that therefore, there was no necessity for him to convene the other arbitrators to deliver to them his decision.

### By CHARLTON, Judge.

THIS is a motion to set aside the award rendered in this case, upon the following exceptions:

*1st.* Because excessive damages have been awarded *to the plain-tiff*, in this case. *1st.* that interest has been allowed by them on the rents of the year 1813, 1814 and 1815, although the accompanying affidavit of *Joseph Law* proves an offer having been made by the defendant through the said *Law* to Mr. *Roswell King*, the agent of the plaintiff, to pay the rent agreed on between Mr. *Wood-ruff*, the prior agent, and the defendant, for those years, which offer was rejected by the said *Roswell King*. And that the same offer was made to *R. W. Habersham, Esq.* attorney for plaintiff, who postponed any adjustment or payment, at or about the time of the offer, by referring the subject for consideration at the next Liberty Court.

2. Interest has been allowed by them for the years 1816, 1817, 1818, and 1819, on a rent valued by themselves, never previously ascertained by the parties, and the demand for which was in the nature of an open account, or damages for a supposed trespass, neither of which could legally carry interest.

3. During the years 1816 and 1817, *Wilson* was in law, the tenant under the agreement between *Woodruff* and himself for the payment of $25 00 per annum, whereas the award subjects him to the payment of $137 50 per annum, a rent entirely beyond a just consideration for the occupancy of the premises, if no agreement subsisted, and therefore excessive, for the years 1818 and 1819 also.

II. Because the arbitrators not having agreed on the matters referred to them, called in as umpire *Sam'l. S. Law,* who subsequently decided without having heard the testimony of *Jos. Law,* who had been named by defendant as a material witness for him.

III. That contrary to the express understanding of the arbitrators, as stated in the accompanying affidavit of *Thomas Mallard,* one of them, the other, *Jno. Stevens,* had several interviews with the said *Sam'l. S. Law,* on the subject of the submission, and that *Mallard* was not invited to advise with the umpire, and that he (*Mallard,*) had consequently no opportunity of removing the impressions on the said *Law's* mind which the *exparte* explanations of *Stevens* may have produced.

IV. Because contrary to practice in cases of umpirage, and in opposition to the principles of common justice, the said *Samuel S. Law* did not convene the arbitrators to deliver to them his decision, precluding thereby *Mallard's* requiring all testimony for defendant first to be read or heard by him, and in case of refusal to read or hear, precluding his protesting against the decision for partiality, or impropriety, if he had thought any existed.

The prominent causes usually assigned in law or in equity for setting aside an award do not find a place in these exceptions—and these causes are, corruption, partiality, or concealment of essential circumstances. An award may also be set aside upon a variety of other grounds, and particularly, that urged by Mr. *Jackson*—where the arbitrators intending to act upon, and follow

a principle of law, happen to mistake it.    But, in a late case, *Kyd* on *awards* (Amer. Edit. 1808) p. 351.    "Where no lawyer could doubt upon the point of law, this distinction was laid down by the Court of King's Bench ; that where the arbitrators meaning to follow the law in their determination happen to mistake it, this is a good ground for setting aside their award, so far as it is affected by that mistake ; but that knowing what the law is, or laying it entirely out of their consideration, they make what they conceive, under all the circumstancces of the case,  to be an equitable decision, it is no objection to the award that in  some particular point it is  manifestly against law."

The following is the submission and award in this case, "It is agreed by *Roswell King* in behalf of the plaintiff, and by *Josiah Wilson* the actual defendant, that the plaintiff be at liberty to take a verdict ; and that all questions as to rent which has accrued, and all other questions respecting the previous occupancy of the lands in question between the parties, shall be submitted, forthwith, to two gentlemen of this county, the one to be appointed by the plaintiff, or *Roswell King*, *Esq.* his late attorney, and the other by *Josiah Wilson*, or his attorney, to whom all evidences, documents and agreements for rents and damages shall be submitted, and who shall thereupon decide what sum or sums of money shall be paid by the defendant, to the said plaintiff or his representatives, for the previous use and occupancy of the said land and damages ; and if the said two persons shall disagree, they may call in a third, and the decision of any  two shall be final and *conclusive* between the parties.

(Signed)        ROSWELL KING,  for Plaintiff.
                 JOSEPH WILSON,

The subject matter of disagreement between the parties in the above case was referred by them to the decision of *Thomas Mallard* and *John Stevens, Esqr's.*  A meeting was accordingly

held at Riceboro' on the 10th January, to receive testimony, and hear explanations; the parties attended, made their several statements, and submitted a number of documents. In order to give the subject a patient and strict investigation, it was determined by the arbitrators to take the papers to their respective abodes, examine them leisurely, and again convene, whenever they were prepared to make a decision. On the 4th of February, they accordingly convened, and on comparing opinions, a disagreement was found to exist on some material points: Hence it became necessary to call in a third person; and agreeably to the powers in them vested, they called upon *Sam'l. S. Law, Esq.* Whereupon the following decisions were determined upon, and are hereby declared by us, the undersigned arbitrators, to be our solemn decisions on the case, *viz:* 1st. The lands in question came into the occupancy of *Col. Wilson* by an agreement entered into between him and *Geo. Woodruff, Esq.* for *J. Champneys.* This agreement made the 10th Feb'y. 1813, authorized *Col. Wilson* to enter on the premises and cultivate 50 acres of land, by paying 50 cts. per acre at the expiration of each year. The motives which prompted the attorney to give a lease at this low rate, were no doubt founded in policy, to wit, to have any tenant upon the spot to watch over the premises, and particularly the buildings. But it is a fact well known, that the buildings on the plantation, were in a state of dilapidation at the time, as scarcely to be worthy of notice; nor are we in possession of sufficient testimony to satisfy us, that *Col. Wilson* did commit a trespass on them. We therefore decide that the agreement between *Wilson* and *Woodruff,* shall be sustained; or, in other words, that for 3 years following 10th Feb. 1813, *Col. Wilson,* shall pay 50 cts per acre for 50 acres of land, with interest, upon the several rents as they respectively became due, (see statement subjoined.) 2ndly. On further examination of the documents submitted, it is also apparent, that Mr. *R. King,* succeeded Mr. *Woodruff* in the agency. Hence all former agreements ceased,

PART I.—B. 2.

and it became the duty of *Colonel Wilson*, to make arrangements, under the authority of the new agent. In order, to this, it is perceived, that he opened a correspondence with *Mr. King*, in behalf of *Mr. Sam'l. Lewis* and himself, on the subject of purchasing those lands—after many and various letters had passed between them, in relation to the purchase, it was at length determined to refer the valuation of the lands in question to three disinterested persons—Accordingly, on the 23d Feb'y. 1818, the persons designated appeared on the premises, and made a valuation. It does seem to us to have become the duty of *Colonel Wilson* either to receive the lands at the valuation then made, on the condition of good and sufficient titles being executed to him, or to have abandoned them altogether. But as he refused to do the one, and still held on to his possession, he subjected himself to the payment of a high rent, for so much of the land as he cultivated. It is a fact well known, that during the last four years of his possession, *Col. Wilson* made good crops of Cotton on the land, and that the price of the article for these years was equal to any price before or since known in our country. Hence we decide, that for four years following the 10th Feb'y. 1816, *Col. Wilson* shall pay $2 50 for every acre which he cultivated, with interest on the several rents as they respectively became due—(see statement subjoined.) We consider *Col. Wilson* to have been the tenant of *Champneys*, until the 10th Feb'y. 1820, at or about which time he delivered up the premises to *Mr. Mell*. It is true that *Mr. Mell* rented the lands from *Wilson*, and that an agreement in writing was entered into between them, but it is equally true that this agreement was cancelled in a few weeks thereafter. *Wilson* expressed to *Mell* his desire to surrender up the land, if he, *Mell*, would release him from his contract; *Mell* acquiesced in his wishes, and soon after communicated with *Mr. King*, the agent on the subject. It is certain that *Wilson* never received any rent from *Mell*—and it appears to us to be wholly immaterial, by whom the rent is paid, whether by one or the

other. Hence we decide that *Wilson* shall not be made responsible for the rent of the premises for the years 1820 and 1821. 3dly. It is claimed by *Col. Wilson*, that a suitable allowance ought to be made to him for the buildings, and other improvements which he caused to be made and erected upon the plantation—also that the expenses which he was at as defendant in the case of ejectment, ought to be placed to his credit in the account. To the first claim, we answer, that it does not appear to have been the understanding of the parties, that any buildings should have been erected upon the premises, except for the special use and convenience of the tenant; that Col. *Wilson* occupied the premises sufficiently long to be compensated for the improvements which he made, and that it is an acknowledged fact, that he did cause to be carried away some of those improvements. To the second claim, we answer, that although the agent *Mr. King* may have been in the wrong for not staying the suit, when he *Wilson*, offered to give up the land on certain conditions, yet *Col. Wilson* was certainly wrong for making any plea to the ejectment, except that the suit was an unnecessary one, as he had, or would relinquish the premises. We therefore decide, that no deduction ought to be made in either case. 4thly. *Mr. King* as agent claims damages from *Col. Wilson*, for trespasses committed by him while tenant—to this claim we answer, that we are not sufficiently versed in principles of law to make a legal decision, but on principles of Equity we unhesitatingly declare, that so far as those trespasses have been made known to us, whatever may have been the motives for their perpetration, we do not believe that any essential injury has ultimately resulted to the property of the plaintiff. Hence we decide that no damages ought to be awarded by us under this claim. The foregoing decisions so far as our feeble judgments extend, are based on the principles of Equity and Justice. If they shall prove satisfactory to the parties, we shall feel amply rewarded—But if otherwise, we have the consolation to know, that we are justified by a tribunal superior to the opinions of men, our own consciences.

[Champneys vs. Wilson.]

## Statement of Rents.

| | |
|---|---|
| Rent of 50 acres of land, at 50 cts. per acre, from 10th Feb. 1813 to 10th Feb. 1814, | $25 00 |
| Interest on $50 from 10th Feb. 1813 to 10th Feb. 1822, | 16 00 |
| Rent as above from 10th Feb. 1814 to 10th Feb. 1815, | 25 00 |
| Interest on the same for seven years, | 14 00 |
| Rent as above from 10th Feb. 1815 to 10th Feb. 1816, | 25 00 |
| Interest on the same for 6 years, | 12 00 |
| Rent of 55 acres of land at $2 50 per acre from 10th Feb. 1816 to 10th Feb. 1837, | 137 50 |
| Interest on this amount for 5 years, | 55 00 |
| Rent as above from 10th Feb. 1817 to 10th Feb. 1818, | 137 50 |
| Interest on this amount for 4 years, | 44 00 |
| Rent as above from 10th Feb. 1818 to 10th Feb. 1819, | 137 50 |
| Interest on this amount for 3 years, | 33 00 |
| Rent of 15 acres of land at $2 50 per acre from 10th Feb. 1819 to 10th Feb. 1820, | 37 50 |
| Interest on this amount for 2 years, | 6 00 |
| ·Total amount, | $705 00 |

Liberty Co. 15th Feb. 1822.

JNO. STEVENS,
SAM'L. S. LAW."

I think the arbitrators have followed the law of Georgia in allowing interest upon the rents under the contract between *Wilson* and *Woodruff*, and subsequently, for the reasons they have assigned : but if they have not followed the law, it does not appear they intended to do so, and if such was not their intention, it only remains for me to ascertain, or rather to be convinced, that they have framed an equitable decision. I am convinced that the arbitrators have rendered an equitable decision, and it does not appear to me, that they meant to adhere to any strict principles of law. They have rendered their award under an unusual solemnity of feeling, and with perfect candour and impartiality. This was a reference to ascertain the damages the plaintiff *Champneys* had incurred, and which the defendant ought to pay as mesne profits, after consenting that *Champneys* should take a verdict against him in an action of ejectment. Under the circumstances stated in the award, a jury would most certainly

[Champneys vs. Wilson.]

have given damages, equal to, if not exceeding the amount awarded. *Mr. Habersham* suggested this, I agree to it, and it affords one of the strongest features in the case to reconcile me to the equitable decision of the award. There was no necessity to give any notice of what is termed the umpirage of the third person called in by the nominated arbitrators, because under the terms of.the submission he was only an *arbitrator*; and the award would have been good with his approbation and signature with that of the persons, selected by *King*, the agent, and *Mr. Wilson*. *Mr. Lewis'* testimony could only have had a reference to the contract between *Woodruff* and *Wilson*—it had therefore no material bearing upon the justice and equity of the award, and must besides have been known to all the arbitrators previous to the award.

*Motion overruled.* *Ordered*, That judgment on the award be entered up as of the last term of the Superior Court of *Liberty County*.

HABERSHAM, for the motion—LAW, against it.